**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 08-1138 PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Roy Francis, Jr. (1), Keith Allen Francis (2), | |
| Defendants. | |

Defendants Roy and Keith Francis have been charged with being felons in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendants have filed a motion to suppress evidence discovered and derived from the stop and search of their vehicle. The parties have fully briefed the motion. A hearing was held on February 26, 2009. For the following reasons, the Court will deny the motion.

**I.  Background.**

In August of 2008, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), working with the Arizona Department of Game and Fish, learned that Keith Francis had been issued two hunting permits in Arizona. The first permit was for an antelope hunt to occur in northern Arizona between September 5 and 14, 2008. ATF Special Agent Ray Friend determined through his investigation that Keith Francis had been convicted of second degree murder and assisting in a criminal street gang in February of 1998 in Arizona and had been sentenced to ten years in prison. Agent Fried learned that Roy Francis had been convicted of attempted rape in the state of Utah in May of 1996 and had been

1  sentenced to 15 years in prison.  Agent Friend found that neither Defendant had obtained a
2  restoration of his civil rights.
3        On the basis of this information, and as part of an ATF task force investigating
4  potential weapons offenses, law enforcement authorities began conducting surveillance at
5  the home of Ray Francis, 239 West Piedmont, Phoenix, Arizona, and the nearby home of
6  Keith Francis, 7 West Harwell, Phoenix, Arizona.  On September 2, 2008, at approximately
7  1:00 p.m., task force detective Dennis Olson saw a maroon van with an empty trailer backed
8  into an alley behind the Piedmont address.  Roy Francis subsequently moved the van to the
9  front of the Piedmont home.  Detective Olson then watched as Roy Francis and others exited
10 the home and carried bottles of water, food, and bags to the van.
11       At approximately 1:55 p.m., Keith Francis arrived at the Piedmont address in a pickup
12 truck.  At approximately 2:00 p.m., Detective Olson observed Keith Francis remove a black
13 duffel bag and a dark gray hard rifle case from the truck and carry them to the passenger
14 compartment of the van.  Detective Olson recognized the case as a rifle case.  Keith Francis
15 then left the Piedmont home and returned to his house on Harwell.  He entered the house and
16 emerged in changed clothes.
17       At approximately 2:20 p.m., Roy Francis left the Piedmont home alone and drove to
18 the Harwell house in the maroon van.  Roy and Keith Francis then worked together to load
19 an ATV onto the trailer behind the van.  At approximately 2:33 p.m., Keith Francis locked
20 the front door to the Harwell address and departed with Roy in the van.
21       The van drove west on Baseline Road and turned right onto Seventh Avenue.  After
22 the turn, Phoenix Police Sergeant Peter Fenton, acting in coordination with the ATF task
23 force, made a traffic stop of the van for traffic violations observed during the right-hand turn.
24 A police officer approached the passenger side of the van, and Keith Francis identified
25 himself to the officer.  The officer asked Keith Francis if there were any weapons in the van,
26 and he said "no."
27       Phoenix police officers took Keith Francis into custody and asked Roy Francis to exit
28 the van while it was searched.  The search, which was conducted without a warrant, revealed

1  two hard rifle cases and a soft pistol case. The cases were opened, and contained a Browning 7 millimeter rifle, a Sako .300 caliber rifle, and a Remington .223 caliber pistol. Ammunition was also found in the van. Both defendants were arrested.

On the basis of this information and a subsequent interview with Roy Francis, law enforcement officers obtained a warrant for the search of both homes. Approximately 31 firearms were located in the home of Roy Francis. Live ammunition was found in the home of Keith Francis. The Government subsequently charged both Defendants with being felons in possession of firearms.

Defendants' motion argues that the officers acted improperly when they stopped the van, searched the van, and, on the basis of the illegal stop and search, searched the homes. They asked the Court to suppress all evidence found as a result of the stop and searches.

**II.     Legal Principles.**

The Court must decide whether the officers possessed probable cause to stop and search Defendants' van. If they did, the stop and search were proper and the subsequent searches of Defendants' homes were not tainted.

The parties' briefing devotes considerable attention to whether the traffic stop was based on actual traffic violations. The Court finds this issue to be irrelevant. Even if the officers had reasonable suspicion to stop the van for traffic violations, such suspicion would not have authorized them to search the van. "Officers may search an automobile so long as they have probable cause." *United States v. Ibarra*, 345 F.3d 711, 715 (9th Cir. 2003). The key question, therefore, is whether the officers had probable cause to search the van. "Probable cause to search exists when the known facts and circumstances are sufficient to warrant a reasonable person to conclude that contraband or evidence of a crime will be found." *Id*. at 716. Traffic violations would not have given rise to probable cause to believe that there was contraband or evidence of a crime in the van. The probable cause sufficient to support the search in this case, therefore, must have been based on the weapons violation. And if the officers had probable cause to search the van based on the weapons violation, they also had probable cause to stop the van. The Supreme Court has recognized "the traditional

- 3 -

1  common law rule that probable cause justifies a search *and* seizure." *Whren v. United States*,
2  517 U.S. 806, 819 (1996) (emphasis added).

3  Two other principles are relevant.

4  First, in deciding whether probable cause existed in this case, the Court must consider
5  the totality of the circumstances. *See United States v. Davis*, 530 F.3d 1069, 1084 (9th Cir.
6  2008). As the Ninth Circuit has explained, "[p]robable cause exists when, under the totality
7  of the circumstances, 'there is a fair probability that contraband or evidence of a crime will
8  be found in a particular place.'" *United States v. Luong*, 470 F.3d 298, 902 (9th Cir. 2006),
9  (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

10  Second, the Court should consider the collective knowledge of all the officers
11  involved in the criminal investigation. *United States v. Ramirez*, 473 F.3d 1026, 1030-37
12  (9th Cir. 2007). All of the officers involved in this case were either part of the ATF task
13  force or were acting in communication with the task force. The Ninth Circuit has found this
14  circumstance sufficient to invoke the "collective knowledge" doctrine. *Id*.

15  **III.   Probable Cause Determination.**

16  At the hearing on February 26, 2009, Defendants conceded that the following facts
17  were known to officers in the task force before Defendants' van was stopped:

18  • Roy and Keith Francis were both convicted felons.
19  • Agents had examined photographs of each Defendant.
20  • Agents had determined the location of each Defendant's home.
21  • Keith Francis had applied for at least two hunting permits.
22  • The hunting permits allowed individuals to hunt with firearms and bows.
23  • The first hunt was scheduled for September 5-14, 2008.
24  • In order to reach the area of the hunt before dark, a person would need to leave
25    Phoenix by about 3:00 p.m.
26  • Before 3:00 p.m. on September 2, 2008, a maroon van with an empty trailer
27    was pulled in front of Roy Francis' home.
28  • Water, food, and other bags were loaded into the van.

- 4 -

1           •       Defendants loaded an ATV onto the trailer pulled by the maroon van.
2           •       After Keith Francis had locked the front door of his house, Roy and Keith
3                   Francis left the house in the van, pulling the trailer with the ATV.

At this point, officers had a reasonable basis for believing that Roy and Keith Francis were going hunting. They had obtained a permit for the hunt to begin in two days, they loaded the van with supplies, they loaded an ATV – which is often used in hunting big game – on the trailer, and they appeared to be leaving Phoenix before 3:00 p.m., time enough to reach the hunting area before dark. The critical factual dispute in this case is whether the officers had a reasonable basis for believing that Defendants had a firearm in the van.

### A.    Testimony of Detective Olson.

Detective Olson testified that he was positioned between 300 and 500 feet from Roy Francis' house and had an unobstructed view of the front yard and the van as it was being loaded. Detective Olson was using binoculars. Detective Olson testified that he saw Keith Francis load an object that Detective Olson readily recognized as a rifle case into the van. He testified that Keith Francis carried the object in his right hand from his truck to the van. He was holding the rifle case by a handle on the top of the case. The front of the case extended approximately two feet in front of Keith Francis and the back extended approximately two feet behind him. Francis was also carrying a duffle bag that partially obscured the middle of the case. Detective Olson testified, however, that he could see the entire case as Keith Francis reached forward to place it into the van.

Detective Olson recognized the object as a rifle case because of its unique shape. It was approximately five feet in length and was contoured to the shape of a rifle. The back end of the case was wider than the front end, similar to the contour of a rifle. Detective Olson confirmed that the bottom photograph admitted during the hearing as Exhibit 25 depicts the kind of rifle case that he saw Keith Francis place in the van.

Two rifle cases retrieved from the van were placed in evidence during the hearing. They are similar in color, length, and shape. Both taper from a wide end to a more narrow front and both have a handle at the top, middle potion of the case. Detective Olson was

- 5 -

1  unable to identify which of the two cases he saw Keith Francis place into the van, but
2  testified that both of them appeared very similar to the case he observed.

3  Detective Olson testified that he has had years of experience with firearms as a
4  member of the Phoenix police department. He has worked in the homicide division, on the
5  SWAT team, and now as a member of the gun enforcement squad. He is assigned as a
6  member of the ATF task force. He testified that he had absolutely no doubt that the object
7  being placed in the van was a rifle case. The Court finds Detective Olson's testimony to be
8  credible.

**B.  Defense Arguments.**

Defendants spend considerable effort arguing that the rifle case is not sufficiently distinctive to fall within the "single-purpose container" exception to the Fourth Amendment's warrant requirement. This is not a case, however, where the "single-purpose container" exception need be invoked. The exception holds that certain containers so obviously disclose the nature of their contents that the possessor of the container can have no reasonable expectation of privacy in the container. *United States v. Gust*, 405 F.3d 797, 799 (9th Cir. 2005). Because a person can have no reasonable expectation of privacy, the container is not subject to the warrant requirement of the Fourth Amendment. *Id.*

Here, the officer's search of the van and the gun cases found in the van need not be justified by the single-purpose container exception. Search of the van and its contents was justified by the "automobile exception" to the warrant requirement. The Supreme Court has held that "[t]he police may search an automobile *and the containers within it* where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991) (emphasis added). "No warrant is necessary because of the so-called 'automobile exception' to the Fourth Amendment's warrant requirement." *Ibarra*, 345 F.3d at 715. Thus, if the officers had probable cause to search the van, they were permitted to open the rifle case without a warrant and without relying on the single-purpose container exception. Moreover, even if the shape of the gun case observed by Detective Olson would not be sufficient to invoke the single-purpose container exception – an issue the Court need

- 6 -

not decide – Detective Olson's observation of its shape and size is part of the totality of the circumstances the Court must consider in deciding whether the officers acted with probable cause.[1]

Defendants argued during the hearing that the Court must disregard Detective Olson's expertise and familiarity with rifle cases. Defendants base this assertion, however, on a component of the single-purpose container exception which states that containers must readily reveal their contents to lay persons and that the expertise of law enforcement officers must be disregarded. *Gust*, 405 F.3d at 801. This requirement exists in the single-purpose container exception because the rationale for the exception is "focused upon the individual's reasonable expectation of privacy, which is established by general social norms," not by law enforcement expertise *United States v. Miller*, 769 F.2d 554, 560 (9th Cir. 1985) (quotation omitted). When the Court addresses the existence of probable cause, however, "[t]he experience and expertise of the officers involved in the investigation and arrest may be considered." *United States v. Ortiz-Hernandez*, 427 F.3d 567, 573 (9th Cir. 2005) (quotation omitted).

Defendants also contend that the object Detective Olson saw Keith Francis place in the van could easily have been a bow case or might have contained an air rifle or other legal weapon. They assert, therefore, that probable cause could not arise from the shape of the case. In support of this argument, Defendants presented photographs during the hearing of a hard bow case found in Defendants' van. The bow case has a half-moon shape and appears

---

[1] Defendants argue that this case is controlled by the decision in *Gust*, where the Ninth Circuit held that a rectangle gun case did not fall within the single-purpose container exception because the gun case could have been used for other purposes, such as carrying a guitar. *Gust*, 405 F.3d at 799-805. As noted above, however, the Court does not rely on the single-purpose container exception in this case because the search of the van and gun cases was justified by the automobile exception to the warrant requirement. There was no vehicle involved in *Gust*, and the cases therefore turned on whether the search of the gun case was justified by the single-purpose container exception. *Id.*

- 7 -

1  to be plastic and black in color. Defendants presented photographs of similarly shaped bow
2  cases apparently taken at a sporting goods store.

3  For several reasons, the Court does not find this argument persuasive. The case
4  placed in the van by Keith Francis, which was one of the two nearly-identical cases found
5  in the van and marked in evidence during the hearing, looks like a rifle case. It is the length
6  and shape of a rifle. It tapers steadily from a wide end to a narrow end. It is not half-moon
7  shaped like the bow cases photographed for evidence in this case. And even if the bow case
8  photographs could call into question whether the single-purpose container exception should
9  be applied to the rifle case, that exception is not being applied.

10  In addition to the distinctive shape of the rifle case, Detective Olson knew from his
11  training and experience that it was a rifle case. Officers also knew that Keith Francis had
12  obtained big-game hunting permits; that the first hunt started in three days in northern
13  Arizona; that Defendants were loading a van with food, water, and other supplies; that
14  Defendants loaded an ATV on the trailer behind the van; and that Defendants were leaving
15  their Phoenix residences in time to arrive at the hunting location before dark. These facts
16  combined with Detective Olson's observations provide a reasonable basis for believing that
17  Keith Francis had placed a rifle in the van.

18  It is true that the rifle case could have contained an air gun or some other object, but
19  the officers were not required to have actual knowledge that a rifle was in the van. Probable
20  cause requires only "a fair probability" that a crime has been committed. *Luong*, 470 F.3d
21  at 902*; Ortiz-Hernandez*, 427 F.3d at 573. The totality of the circumstances in this case
22  clearly gave rise to such a fair probability.

23  Because the officers had probable cause to believe that Keith Francis, a convicted
24  felon, was in possession of a firearm, they had probable cause to arrest him and search the
25  vehicle in which he was located. Once officers confirmed that firearms were in the van, they
26  had probable cause to arrest Roy Francis, also a convicted felon. On the basis of this and
27  evidence obtained from Roy Francis during a subsequent interview, the officers searched
28

- 8 -

1  Defendants' home and found additional evidence.  The Court concludes that none of this
2  evidence was obtained in violation of the Fourth Amendment.

**IT IS ORDERED** that Defendants' Motion to Suppress (Dkt. #22) is **denied**.

Excludable delay pursuant to 18 U.S.C. § 3161(h)(8)(A) is found to commence on December 19, 2008 for a total of 71days.

DATED this 27th day of February, 2009.

David G. Campbell
United States District Judge